UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SOUTH DAKOTA BOARD OF REGENTS,<br><br>Plaintiff,<br><br>v.<br><br>GREEN THUMB COMMODITIES, LLC,<br>AT STRONG COMMODITIES, LLC,<br>d/b/a Green Thumb Commodities, and<br>JOHN DOES 1-25,<br><br>Defendants. | 4:23-CV-04205-KES<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR A PROTECTIVE<br>ORDER |

Defendants, Green Thumb Commodities, LLC, and AT Strong Commodities, LLC (collectively, Green Thumb), move for a protective order, to protect confidential financial information "such as profits, margins, and marketing strategies." Docket 22; Docket 22-1 at 3. Defendants also move to impose the standard attorneys' fees provision for the over-designation of documents as provided under Federal Rule of Civil Procedure 37. *Id.* at 4. Plaintiff, South Dakota Board of Regents (SDBOR), opposes Green Thumb's motion and proposes its own terms for a protective order. Docket 34. The court issues the following order.

## BACKGROUND

SDBOR filed a complaint on December 4, 2023, alleging infringement under the Plant Variety Act (PVPA), 7 U.S.C. § 2321 et seq. Docket 1. The complaint alleges that Green Thumb "bought the harvest of federally protected

oat seed and intentionally, knowingly, and with no mistake thereafter re-sold and offered for sale and exported Plaintiff's protected oat varieties to producers for planting, on multiple occasions, including exports to China." *Id.* ¶ 37. SDBOR asserts that, without proper authorization, Green Thumb's downstream sales of SDBOR's plant varieties constitute infringement under the PVPA. *Id.* ¶¶ 43-52. SDBOR seeks damages, an injunction, and treble damages. *Id.* at 15. On March 15, 2024, Green Thumb filed an answer and denied SDBOR's allegations. *See* Docket 14. Green Thumb asserts several affirmative defenses. *Id.* ¶¶ 1-11, at 7-8.

On June 27, 2024, Green Thumb moved for a protective order.[1] Docket 22. Green Thumb included the parties' competing versions of a protective order with its motion. Docket 22-2; Docket 22-3. Green Thumb contends that the parties have discussed a prospective protective order but have not been able to agree on final language. *See* Docket 22-1 at 1-2. Specifically, the parties disagree on an "attorneys' eyes only" (AEO) provision and an attorneys' fee provision.[2] *Id.* SDBOR agrees that a reasonable protective order should be entered to protect the parties' confidential information but believes that an AEO provision is unwarranted. Docket 34 at 1-6. SDBOR also advocates for a

---

[1] In its brief, Green Thumb confirmed that the parties acted in good faith when negotiating for a protective order before requesting court intervention as required under Rule 37. *See* Docket 22-1 at 1 n.1.

[2] The parties initially disagreed on three issues but have since resolved one of the issues. *See* Docket 37 at 13. Thus, the court addresses the remaining two issues in this order.

2

mandatory attorneys' fees award provision that allows for recovery of fees when a party over-designates documents as confidential. *Id.* at 6.

## DISCUSSION

Under Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "requiring that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1)(G). A trial court has broad discretion to determine whether a protective order is necessary and what degree of protection is sufficient. *Seattle Times Co. v. Rhinehart*, 467 U.S. 30, 36 (1984). Because "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery . . . the trial court [has] substantial latitude to fashion protective orders." *Id.*

The moving party bears the burden to demonstrate good cause for the issuance of the protective order. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). The requisite showing of good cause requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (internal quotation marks omitted); *see also Miscellaneous Docket Matter*, 197 F.3d at 926. "Thus, for good cause to exist, the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted."

*Buehrle v. City of O'Fallon*, 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011). The good-cause inquiry should also consider the relative hardship to the non-moving party, *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973), that "includes an assessment of any substantial detriment to a party caused by the inclusion or failure to include the protection at issue[,]" *Buehrle*, 2011 WL 529922, at *2.

I. **Attorneys' eyes only provision**

Green Thumb seeks to disclose documents in its initial disclosures that fall into three categories: "(1) non-confidential material; (2) confidential material; and (3) attorneys' eyes-only material." Docket 22-1 at 4. The AEO designation, Green Thumb asserts, is expected to apply primarily to documents concerning "profit margins and its business model for trading and exporting various grain." Docket 37 at 10.

An AEO provision in a protective order "prevents a party from viewing the opposing party's sensitive business information while allowing the parties' lawyers to litigate on the basis of that information." *Bussing v. COR Clearing, LLC*, 2015 WL 4077993, at *2 (D. Neb. July 6, 2015). This type of provision "is recognized as an appropriate method of protecting information in very limited situations, *e.g.,* cases involving trade secrets[,]" but is also a "drastic remedy given its impact on the party entitled to the information." *Ragland v. Blue Cross Blue Shield of N. Dakota*, 2013 WL 3776495, at *1 (D.N.D. June 25, 2013). It is drastic because it limits a party's ability to provide necessary assistance to counsel in the case. *Bussing,* 2015 WL 4077993, at *2 (An AEO provision

"limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions.").

The party seeking an AEO designation bears the burden of proving that the information sought is trade secret, confidential research, development, or commercial information and that its disclosure to the opposing party might be harmful. *Id.* If the party seeking protection meets its burden, the burden shifts to the opposing party to prove the information is necessary and relevant to the action. *Id.* "Where discovery of confidential commercial information is involved, the court must 'balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims.' " *Id.* (quoting *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007)).

Here, Green Thumb characterizes its relationship with SDBOR as a dispute between a seller and buyer because it paid SDBOR for the "acquisition and resale of certain harvested crop seeds." Docket 22-1 at 3. Green Thumb states that SDBOR "is in the business of selling (or attempting to license) certain crop seeds that are sold to [Green Thumb] through a [t]hird [p]arty affiliated with [SDBOR]." *Id.* Green Thumb asserts that, upon information and belief, the research fee is determined by and collected on behalf of SDBOR. *Id.* As such, Green Thumb explains that the AEO designation "is necessary to protect [its] most confidential and trade secret financial information, such as

5

profits, margins, and marketing strategies."[3] *Id.* Green Thumb is primarily concerned that (1) "such information could be used against it" by SDBOR; (2) it could be "further damaged if the information were to be inadvertently disclosed to others in the oat industry"; and (3) "other farmers and other buyers from [SDBOR] will also be directly impacted as [SDBOR] sets the same price as to all buyers." *Id.* at 3-4.

SDBOR disagrees with Green Thumb's characterization of their relationship as that of a "seller and buyer," stating that Green Thumb is not an authorized dealer and does not negotiate its research fee prices with SDBOR. Docket 34 at 3, 5. SDBOR asserts that "there is never an arms-length negotiated transaction for a sales price" between the parties in this case, and claims that the South Dakota Crop Improvement Association (SDCIA), not SDBOR, "is the appropriate and authorized entity for South Dakota to inspect and certify seed and collect the research fee on behalf of a variety owner." *Id.* at 4. The research fees, according to SDBOR, are uniform, apply equally to all dealers, and are made available to the public. *Id.* SDBOR maintains that Green Thumb has failed to articulate how the fee framework administered by SDCIA

---

[3] Green Thumb provides one example of the "marketing strategies" it seeks to protect: its "uniquiely negotiated approach to freight which is most certainly propriety." Docket 22-1 at 3. Green Thumb also states that it is prepared to provide the court with a sample of the documents that it seeks to protect under the AEO designation if the court finds it necessary. *Id.* at 4 n.4. In addition, Green Thumb clarifies that this is not a trade secret case, but rather one that requires the protection of "confidential" material. Docket 37 at 2.

6

enables SDBOR to use Green Thumb's profit and loss data in an anticompetitive manner. *Id.* at 5.

In response, Green Thumb argues that SDCIA does not actually establish the research fee, as SDBOR contends, and that SDCIA is "just another part of South Dakota State University." Docket 37 at 4. Green Thumb argues that SDBOR and SDCIA are part of an interconnected web working in tandem to generate revenue for South Dakota's university system. *See id.* at 3-7. Green Thumb essentially argues that by disclosing this highly confidential information to SDBOR, it is disclosing it to SDCIA. *Id.* at 9-10. Green Thumb explains that "if the [u]niversity and its web are provided the precise profit margins and/or marketing strategies used by sellers/resellers such as [Green Thumb], the [u]niversity system has new and important information on how much the [research fee] amount might be increased to maximize profit for the [u]niversity and its web combined." *Id.* at 8.

The court finds that Green Thumb has failed to show good cause for an AEO protective order. Indeed, Green Thumb has described in detail the *type* of harm it may suffer if a vendor or competitor were to obtain its information concerning its profits, margins, and marketing strategies. *See* Docket 22-1 at 3-4. But Green Thumb has not carried its initial burden of establishing that, by disclosing this information *specifically* to SDBOR, it will cause the type of harm Green Thumb describes. Under Green Thumb's theory, SDBOR and SDCIA are at the heart of an interconnected web controlled by the greater South Dakota university system. But Green Thumb has failed to point to any particular and

7

specific demonstration of fact showing that SDBOR will share Green Thumb's confidential profit margin and marketing strategy information with SDCIA. *See* Docket 37 at 2-10. That SDBOR would share this information with SDCIA is simply too speculative.

Further, Green Thumb discusses the categories of discovery in broad terms lacking a precise explanation of what exactly it seeks to protect. For example, profits, margins, and marketing strategies are broadly identified as needing AEO protection, but Green Thumb has submitted no evidence specifically describing the documents within these categories or provided any company-specific effort to create any formulas, surveys, or business strategies underlying the documents. *See Bussing*, 2015 WL 4077993, at 3; *see also Rounds v. Hartford*, 2021 WL 3487102, at *5 (D.S.D. Aug. 9, 2021).

Finally, Green Thumb has failed to explain why labeling its marketing, pricing, margins, and profit information as "confidential material" will not sufficiently protect such information. If the information is marked "confidential," SDBOR has no right to share that information with any other entity—including SDCIA—for any purpose other than as required by this litigation. The "confidential" designation should sufficiently protect Green Thumb's interests, which includes any concern for inadvertent disclosure.[4]

---

[4] One prudential consideration influencing the court's decision here is that the proposed two-tiered heightened designation of material as either "confidential" or "attorneys' eyes only" is likely to lead to more disputes in this matter that require court intervention rather than less. *See Ragland*, 2013 WL 3776495, at *2; *Unico Am. Corp. v. Crusader Captive Servcs. LLC*, 2006 WL 2355524, at *2 (N.D. Ill. Aug. 11, 2006) ("[T]wo-tiered protective orders can be confusing and frequently invite nonproductive satellite litigation"); *cf. Ubiquiti Networks, Inc. v.*

Because Green Thumb has failed to meet its burden of demonstrating good cause, its motion to include an AEO provision in the protective order is denied.[5]

## II.  Attorneys' fees provision

SDBOR advocates for the protective order to include an attorneys' fee provision that mandates an award of attorneys' fees any time a party successfully challenges an over-designation of confidentiality. Docket 34 at 6. Green Thumb asks the court to include paragraph 11 in its version of the prospective protective order, *see* Docket 22-2 ¶ 11, at 7, which leaves in place the standard rule governing attorneys' fees when a party over-designates discovery information set forth in Federal Rule of Civil Procedure 37. *See* Docket 22-1 at 4; Docket 37 at 12.

Rule 37 states that, when a motion for an order compelling discovery is granted, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Rule 37(a)(5)(A) has some

---

*Kozumi USA Corp.*, 2013 WL 772664, at *3 (N.D. Cal. Feb. 28, 2013) (requiring court intervention due to defendant's overuse and abuse of "attorneys' eyes only" designation).

[5] Discovery of information must be relevant and proportional to the parties' claims and/or defenses in the case. *See* Fed. R. Civ. P. 26(b)(1). Although Green Thumb failed to meet its initial burden of demonstrating good cause for the AEO provision, SDBOR's discovery of Green Thumb's marketing, pricing, margins, and profit information must be relevant to its claim. The court provides this reminder because, notably, SDBOR does not clearly explain why such information is relevant to its claim in this matter. *See* Docket 34.

9

exceptions, stating that payment must not be ordered if: (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (2) "the opposing party's nondisclosure, response, or objection was substantially justified;" or (3) "other circumstances make an award of expenses unjust." *Id.*

SDBOR's proposed attorneys' fee provision would essentially negate the exceptions to Rule 37(a)(5)(A) and would automatically award attorneys fees to any party who successfully challenges an over-designation of confidentiality. *See* Docket 22-3 ¶ 11, at 8; Docket 34 at 6. SDBOR argues that this provision would "reduce needless bickering over fees and [would] give teeth to the good faith obligation to review documents prior to any confidentiality designation." Docket 34 at 6. SDBOR also explains that it "offers the provision to ensure [Green Thumb] adhere[s] to [its] good faith obligations when assessing the confidentiality of documents in this case." *Id.* On the other hand, Green Thumb contends that the Federal Rules sufficiently "address this very issue and leave[] the decision to the [c]ourt and its discretion to grant or deny a party their attorneys' fees in discovery disputes." Docket 37 at 12. Green Thumb also states that such a provision would increase the parties' costs and the court's workload because it would incentivize the parties to challenge more designations than usual. *See id.* The court agrees with Green Thumb.

"Courts have held that there is an implicit duty of good faith in Rule 26(c) and the designation of documents under a protective order." *CellTrust Corp. v. ionLake, LLC*, 2022 WL 1553558, at *3 (D. Minn. May 17, 2022) (collecting

10

cases). "The duty of good faith in the protective order is a duty to review the documents in good faith *before* designating them as [confidential]." *Id.* (citation omitted). "Courts have imposed sanctions under Rule 37(b)(2) for over-designation of documents in contravention of a protective order." *Id.* at 5 (collecting cases); *see* Fed. R. Civ. P. 37(b)(2)(A), (C) (stating that courts may impose sanctions on a party who "fails to obey an order to provide or permit discovery," including attorney fees).

  Here, the Federal Rules sufficiently protect the parties' interests concerning the over-designation of documents. Moreover, SDBOR has seemingly put the cart before the horse by attempting to hold Green Thumb to its good faith obligations before even alleging that Green Thumb has violated such obligations. SDBOR's reasoning for the heightened provision—"to reduce needless bickering over fees and to give teeth to the good faith obligation to review documents prior to any confidentiality designation"—is unavailing because a duty of good faith to review documents before designating them as confidential already exists under the Federal Rules. *See CellTrust Corp.*, 2022 WL 1553558, at *3. SDBOR's proposed attorneys' fee provision needlessly attempts to depart from the framework established under the Federal Rules. Any party that over-designates discovery material that is not acting in good faith runs the risk of being sanctioned by the court under Rule 37. *See* Fed. R. Civ. P. 37(b)(2)(A), (C). The Federal Rules provide the teeth necessary to deter the parties from evading their duty to act in good faith in all matters pending before the court, including during discovery. As such, the court grants Green

11

Thumb's proposal for paragraph 11 that does not include a mandatory attorneys' fee provision for over-designation of discovery material.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that Green Thumb's motion for a protective order (Docket 22) is GRANTED in part and DENIED in part. Green Thumb must provide the court with a revised protection order that incorporates the court's ruling by March 17, 2025.

Dated March 3, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE