IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SIOUX FALLS DIVISION

| | |
|---|---|
| SOUTH DAKOTA BOARD OF REGENTS as governing board for South Dakota State University and its South Dakota Agricultural Experiment Station<br><br>Plaintiff,<br><br>v.<br><br>GREEN THUMB COMMODITIES, LLC, AT STRONG COMMODITIES, LLC, d/b/a GREEN THUMB COMMODITIES, and JOSH RENSINK,<br><br>Defendants and<br>Third-Party Plaintiff,<br><br>v.<br><br>CHRIS LEE,<br><br>Third-Party Defendant. | CASE NO. 4:23-cv-4205<br><br>**AMENDED COMPLAINT** |

Plaintiff, South Dakota Board of Regents (the "Board of Regents" or "SDBOR"), as governing board for South Dakota State University ("SDSU") and the South Dakota Agricultural Experiment Station ("SDAES"), brings this action for fraud, infringement, damages, and permanent injunctive relief against Defendants Green Thumb Commodities, LLC, AT Strong Commodities, LLC, d/b/a Green Thumb Commodities, and Josh Rensink, individually ("Defendants"). Defendants have engaged in fraudulent and unauthorized exporting from the United States, selling, conditioning, stocking, shipping, transferring of title, and dispensing without proper notice of Plaintiff's proprietary oat varieties, as well as instigating and actively inducing violations of one or more prohibited acts by others, all in violation of Plaintiff's rights

under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.* ("PVPA"). Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the laws of the United States, and 28 U.S.C. § 1338, which provides that district courts have original jurisdiction over any civil action arising under any Act of Congress relating to plant variety protection.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this district, and Defendants reside in this district.

## THE PARTIES

3. The Board of Regents was created to implement the requirement of Section 3, Article XIV of the South Dakota Constitution, that publicly funded postsecondary institutions be governed by a board of regents. SDCL § 13-49-1. Constituted as a corporation, or body corporate, the Board of Regents enjoys the "power to sue and be sued, to hold, lease, and manage, for the purposes for which they were established, any property belonging to the educational institutions under its control, collectively or severally, of which it shall in any manner become possessed." SDCL § 13-49-11.

4. The Board of Regents controls SDSU and SDAES. SDCL §§ 13-58-1 and 13-58-11, respectively. The Board of Regents encourages institutions under its control to pursue research, to protect intellectual properties arising from such research, and to enter into such agreements as may be necessary and proper to license or otherwise to provide for the commercial application of research results. To such ends, it delegated to institutional officers the authority to secure

- 2 -

4929-8693-3405, v. 1

intellectual property protection in the name of the institution that conducted the research. Board of Regents Policies 1:6, Section 3.6, and 4:34, Section 7.

5.      Founded in 1881 as a land-grant university, SDSU has been committed to the academic and professional advancement of all citizens in the state. As part of this effort, SDSU has a goal to promote, encourage, and aid research in the agricultural arena and to provide the means, methods, and agencies by which inventions and discoveries at SDSU may be patented, commercialized, or otherwise disposed of for the benefit of the people of South Dakota and society as a whole. SDCL § 13-58-1.

6.      Created in 1887 to implement the Hatch Act as part of South Dakota's land-grant institution SDSU, SDAES has a mission to conduct research to enhance quality of life in South Dakota through the beneficial use and development of human, economic, and natural resources. As part of this effort, SDAES assists oat producers, seedsmen, and researchers to strengthen the oat industry by creating an oat variety delivery system that promotes stewardship of varieties and traits, provides new funds for oat research, and ensures availability of improved oat varieties to benefit farmers and consumers. SDAES is under the exclusive ownership and control of SDBOR and has its principal place of operations in Brookings, South Dakota, at SDSU. SDCL § 13-58-11.

7.      Defendant Green Thumb Commodities, LLC is a limited liability company organized pursuant to the laws of South Dakota. The registered agent is Tarri Rott, 433 SE 12th Street Suite 101, PO Box 9, Madison, South Dakota 57042. According to the 2023 Annual Report on file with the South Dakota Secretary of State, the entity is member-managed by Tarri Rott. On information, all members are aware of the entity's conduct alleged in this lawsuit for infringement of Plaintiff's federally protected varieties by a number of violations. This entity is identified as an exporting company by member manager Josh Rensink, who is the person in charge of exporting.

4929-8693-3405, v. 1

8.      Defendant AT Strong Commodities, LLC is a limited liability company organized pursuant to the laws of South Dakota and does business as Green Thumb Commodities. The registered agent is Tarri Rott, 21718 445th Avenue, Oldham, South Dakota 57051. The entity is member-managed by Josh Rensink.

9.      Defendant AT Strong Commodities, LLC is operationally the same ongoing business concern as Defendant Green Thumb Commodities, LLC.

10.      Collectively, the foregoing named entity defendants are referred to as "Green Thumb Defendants."

11.      Defendant Josh Rensink is an individual resident of South Dakota. He is a member manager of the Green Thumb Defendants and is the person in charge of buying and selling commodities and seed involving the Green Thumb Defendants.

## PLANT VARIETY PROTECTION REGISTRATIONS

12.      This action arises under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.,* which provides patent-like protection to breeders of certain plant varieties, and their assignees, who may acquire the right to prevent others from selling the variety or offering the variety for sale for a period of twenty (20) years. 7 U.S.C. § 2483.

13.      On May 29, 2013, SDAES, as authorized by SDBOR, made application to the Plant Variety Protection Office pursuant to 7 U.S.C. § 2421 for protection of a novel variety of oat it had developed known as the "Goliath" oat variety. In South Dakota, the Goliath oat variety is one of the top performing varieties.

14.      On February 26, 2016, a PVP Certificate for the Goliath variety was issued to SDAES pursuant to 7 U.S.C. § 2482 in the name of the United States of America under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. Certificate No. 201300369 is not scheduled to lapse until February 26, 2036.

- 4 -

15.     On February 28, 2024, pursuant to 7 U.S.C. § 2421(b) and 7 U.S.C. § 2486, SDBOR submitted a Recordation with the Plant Variety Protection Office to harmonize all PVP Certificates owned by SDBOR to be issued the name of one entity, and not subdivisions thereof, namely the South Dakota Board of Regents. The Recordation was reviewed and approved by the Commissioner for the Plant Variety Protection Office on March 1, 2024. The PVP Certificate for Goliath is attached as **Exhibit 1**.

16.     SDBOR and the seed dealers authorized by SDBOR to sell the Goliath oat variety provide notice on the seeds' packaging or simultaneously with bulk sales that the Goliath oat variety is protected by the Plant Variety Protection Act. In addition, SDBOR also places PVPA notices on its marketing and promotional materials for the Goliath oat variety, 7 U.S.C. § 2567. The Goliath oat variety seed is processed and sold by SDBOR as a class of certified seed, meaning that before every sale, the seed must be certified by an approved government or private agency as to variety, germination, and purity.

17.     On December 29, 2015, SDBOR made application to the Plant Variety Protection Office pursuant to 7 U.S.C. § 2421 for protection of another novel variety of oat it had developed known as the "Hayden" oat variety. In South Dakota, the Hayden oat variety is one of the top performing varieties.

18.     On November 28, 2016, a PVP Certificate for the Hayden variety was issued to SDBOR pursuant to 7 U.S.C. § 2482 in the name of the United States of America under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. Certificate No. 201600054 is not scheduled to lapse until November 28, 2036. The PVP Certificate for Hayden is attached as **Exhibit 2**.

4929-8693-3405, v. 1

19.     SDBOR and the seed dealers authorized by SDBOR to sell the Hayden oat variety provide notice on the seeds' packaging or simultaneously with bulk sales that the Hayden oat variety is protected by the Plant Variety Protection Act. In addition, SDBOR also places PVPA notices on its marketing and promotional materials for the Hayden oat variety, 7 U.S.C. § 2567. The Hayden oat variety seed is processed and sold by SDBOR as a class of certified seed, meaning that before every sale, the seed must be certified by an approved government or private agency as to variety, germination, and purity.

20.     On March 1, 2013, SDAES, as authorized by SDBOR, made application to the Plant Variety Protection Office pursuant to 7 U.S.C. § 2421 of the PVPA for protection of another novel variety of oat it had developed known as the "Horsepower" oat variety, which is also a top performer.

21.     On March 30, 2015, a PVP Certificate for the Horsepower variety was issued to SDAES pursuant to 28 U.S.C. § 2482 in the name of the United States of America under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. Certificate No. 201300160 is not scheduled to lapse until March 30, 2035.

22.     On February 28, 2024, pursuant to 7 U.S.C. § 2421(b) and 7 U.S.C. § 2486, SDBOR submitted a Recordation with the Plant Variety Protection Office to harmonize all PVP Certificates owned by SDBOR to be issued the name of one entity, and not subdivisions thereof, namely the South Dakota Board of Regents. The Recordation was reviewed and approved by the Commissioner for the Plant Variety Protection Office on March 1, 2024. The PVP Certificate for Horsepower is attached as **Exhibit 3**.

23.     SDBOR and the seed dealers authorized by SDBOR to sell the Horsepower oat variety provide notice on the seeds' packaging or simultaneously with bulk sales that the

Horsepower oat variety is protected by the Plant Variety Protection Act. In addition, SDBOR also places PVPA notices on its marketing and promotional materials for the Horsepower oat variety, 7 U.S.C. § 2567. The Horsepower oat variety seed is processed and sold by SDBOR as a class of certified seed, meaning that before every sale, the seed must be certified by an approved government or private agency as to variety, germination, and purity.

24.     Plaintiff additionally has PVP rights to many other oat varieties including Natty and Shelby 427. All such certificates of protection are valid and subsisting. SDBOR and the seed dealers authorized by SDBOR to sell any protected oat variety provide notice on the seeds' packaging of the Plant Variety Protection Act protection. In addition, SDBOR also places PVPA notices on its marketing and promotional materials for all its protected oat varieties, 7 U.S.C. § 2567. All protected oat variety seed is processed and sold by SDBOR as a class of certified seed, meaning that before every sale, the seed must be certified by an approved government or private agency as to variety, germination, and purity.

25.     The PVP Certificates for Plaintiff's oat varieties, including the Goliath, Hayden, Horsepower, Natty, Shelby 427, and Stallion varieties, all specify that the seed of the respective varieties can only be sold in the United States as a class of certified seed, meaning that before sale the seed had to be certified by an approved governmental or private agency as to variety and purity. This added step is known as a Title V election under the Federal Seed Act, 7 U.S.C. § 1611. *See also* 7 U.S.C. § 2483(a)(2)(A).

26.     The PVP Certificates for each of Plaintiff's oat varieties at issue in this lawsuit were and remain in full force and effect during the time period of alleged infringement of each respective variety.

27.     Title 7, Section 2541 of the United States Code provides that it is an infringement of the owner's rights in a protected variety, *inter alia*, to sell the variety without authorization of the owner or to dispense the variety to another in a form that can be propagated without notice that it is a protected variety. Section 2541 also provides that it is an infringement to use the variety for propagation without authority; to stock, condition, ship, or consign the protected variety without authority; and to instigate or actively induce any act that constitutes an infringement.

28.     Section 2541 likewise provides that it is an infringement to export a protected variety outside the United States without authority.

29.     At no time did Plaintiff grant any Defendant authorization to sell its protected oat varieties in a non-certified manner.

30.     At no time did Plaintiff grant any Defendant authorization to export any variety.

31.     The PVPA provides in 7 U.S.C. Section 2561 that an owner shall have a remedy by civil action for infringement of plant variety protection and that if the variety is sold under the name of the variety shown in the certificate, there is a prima facie presumption that the seed in the bag or lot is the protected variety. Under 7 U.S.C. § 2562, a PVP Certificate is presumed to be valid.

32.     Title 7, United States Code Section 2563 provides that a court may grant an injunction to prevent violations of rights under the PVPA. Section 2564 provides that upon a finding of infringement, the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty together with interest and costs. Section 2564 also provides that the court may increase the damages by up to three times the amount determined, and, in exceptional cases, the court may award reasonable attorney's fees to the prevailing party under § 2565.

4929-8693-3405, v. 1

- 9 -

33. Title 7, United States Code Section 2543 provides a crop exemption for growers and other persons that permits a bona fide sale of a protected variety into usual grain channels (i.e., for feed purposes), but Section 2543 does not exempt from PVPA protection the sale or export of grain of a protected variety for use as seed for reproductive purposes without the authorization of the owner.

34. Title 7, United States Code Section 2543 further provides that if a purchaser diverts a protected variety from usual grain channels to use for reproductive purposes, that purchaser is deemed to have notice under Section 2567 that its actions constitute an infringement of the PVPA for purposes of a damages action by the owner of the protected variety.

## DEFENDANTS' WILLFUL VIOLATIONS OF PVPA

35. At all times relevant herein, each Defendant had actual notice and knowledge that Plaintiff's oat varieties were federally protected by the PVPA.

4929-8693-3405, v. 1

36.    The Defendants understand PVPA protections are ubiquitous for oat seed—a major spring-sown, small grain crop. In a 2015 study, <u>all sixteen (16) available oat varieties were federally protected by the PVPA</u>. See table, below:

| Table 1 | State of origin, PVP[a] and disease ratings[b] for oat varieties included in both experiments at ISU Northern and Northeastern Research and Demonstration Farms in Kanawha and Nashua, respectively, in 2015. | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | ---Disease name and disease ratings[c] by variety--- | | | |
| Variety | State of origin[a] | PVP[b] | Maturity | Crown rust | Stem rust | BYDV[d] | Smut |
| Badger | WI | PVP | Early | MR | MS | MR | R |
| BetaGene | WI | PVP | Mid-Late | MR | MR | R | R |
| Deon | MN | PVP | Late | MR | MS | MR | R |
| Excel | IN | PVP | Early | MS | S | R | MR |
| GM423 | GM | PVP | Late | MS | MS | MR | - - |
| Goliath | SD | PVP | Late | MS | R | MR | MR |
| Hayden | SD | PVP | Mid-Late | MS | MS | MR | R |
| Horsepower | SD | PVP | Medium | MS | MS | MS | MR |
| Jerry | ND | PVP | Medium | MS | MS | MS | MS |
| Leggett | AAFC | PVP | Early | MR | MR | S | R |
| Natty | SD | PVP | Medium | MR | MS | MR | R |
| Rockford | ND | PVP | Late | MS | MS | MR | MR |
| Saber | IL | PVP | Early | MS | S | R | MS |
| Shelby 427 | SD | PVP | Medium | MS | MS | MR | MR |
| Souris | ND | PVP | Medium | S | MS | MS | MR |
| Tack | IL | PVP | Early | R | S | R | S |

[a] Origin: AAFC-Agriculture and Agri-Food Canada; GM-General Mills; IL-University of Illinois; IN-Purdue University; MN-University of Minnesota; ND-North Dakota State University; SD-South Dakota State University; WI-University of Wisconsin.
[b] PVP = Plant Variety Protection. The PVP Act provides a certificate to the developer of a variety granting exclusive rights for reproducing and marketing the seed.
[c] Disease Ratings: S = susceptible; MS = moderately susceptible; MR = moderately resistant; R = resistant.
[d] Disease: BYDV = Barley Yellow Dwarf Virus.

Page 2 of 6                PRACTICAL FARMERS OF IOWA                November 2015
                           www.practicalfarmers.org

37.    Defendants had actual, specific, and repeated notice that the oat varieties it was selling were federally protected and could not be sold in an uncertified manner or exported without authority.

38.    Defendants have direct and personal knowledge of the Plant Variety Protection Act and the protections and limitations surrounding use of Plaintiff's and others' federally protected varieties.

39.    In the 2022 harvest season, and likely before and after such date, on multiple occasions, Defendants bought the harvest of federally protected oat seed and thereafter intentionally, knowingly, and with no mistake re-sold and offered for sale and exported Plaintiff's

4929-8693-3405, v. 1

protected oat varieties for planting, including exports to China. Such sales and exports were not authorized by Plaintiff.

40.     Without Plaintiff's authority, Defendants exported Plaintiff's federally protected varieties to China using Wendy Jia doing business as Lovefield Agricultural, LLC.

41.     In the 2023 harvest season, and likely before and after such date, on multiple occasions, Defendants bought the harvest of federally protected oat seed and thereafter intentionally, knowingly, and with no mistake re-sold and offered for sale and exported Plaintiff's protected oat varieties for planting.

42.     Without Plaintiff's authority, Defendants exported Plaintiff's federally protected varieties to China using Wendy Jia doing business as Lovefield Agricultural, LLC. Such international sales were not authorized by Plaintiff.

43.     Defendants purchased Plaintiff's Hayden variety oats, and others, and thereafter sold the Hayden variety to China for planting purposes.

44.     Defendants received such identity-specific Hayden variety seed with the knowledge that it is federally protected but nonetheless exported such Hayden variety seed to China for planting by creating a counterfeit document on which Defendants altered the variety name from "Hayden" to "Tatsu" with the purpose of escaping detection of the willful infringement.

45.     Josh Rensink falsified documents to secure a Phytosanitary Certificate with the United States Department of Agriculture in knowing violation of the Federal Seed Act, the United States Grain Standards Act, the Plant Protection Act, and the Plant Variety Protection Act.

46.     Josh Rensink admitted under oath to falsifying numerous documents to facilitate Defendants' unlawful export of Plaintiff's protected varieties.

- 11 -

47.     Josh Rensink admitted under oath to using false variety names in connection with selling and exporting Plaintiff's varieties. In one instance, he admitted to deleting the proper variety name of Hayden and replacing it with a fictional name "Tatsu."

48.     Josh Rensink admitted under oath to personally and directly removing the buyer/seller name from official seed certifying documents for subsequent use, yet retaining the official-looking appearance of such documents.

49.     Josh Rensink admitted under oath to personally and directly manipulating at least two separate import certificates issued by an official government entity but could not recall the true extent of his past manipulations to such documents in other export matters.

50.     Josh Rensink admitted under oath to personally and directly manipulating official documents from which royalty payments were calculated, specifically documents identifying seed bought from Sioux Nation Ag Center, and used such manipulated documents to unlawfully export Plaintiff's varieties to China without authorization.

51.     Third-Party Defendant Chris Lee specifically informed Josh Rensink that it was illegal to export Plaintiff's varieties without authorization.

52.     Plaintiff provided Josh Rensink actual notice that his exporting was unauthorized.

53.     Green Thumb Defendants and Josh Rensink are experienced in commercial seed operations utilizing oats that are protected by the Plant Variety Protection Act and were factually aware of the strict protocols and requirements necessary before Title V, PVPA-protected oats may be legally sold for seeding purposes or exported.

54.     At all times relevant to the claims herein, Plaintiff only authorized sales of its protected varieties with written notice containing statutorily designated language signifying that the seed was protected under the PVPA, that unauthorized propagation or multiplication of the

seed was prohibited, and that the use of the seed by the purchaser was authorized only for purposes of growing a commercial crop of grain.

55.     Plaintiff required such notice on all bags of its protected oat varieties sold and on notices accompanying all bulk sales of such oat seed.

56.     Plaintiff has consistently and prominently marked the protected varieties with statutory PVPA notices on its marketing and promotional materials for such varieties. Defendants failed to conform to these requirements.

57.     This is not an isolated incident. Defendants resell for propagation purposes such uncertified and unauthorized seed further downstream to producers when it is time to plant oat seed in South Dakota, other nearby states, and internationally.

## MALICIOUS, INTENTIONAL CONDUCT - EXCEPTIONAL CASE

58.     Pursuant to 7 U.S.C. § 2565, a plaintiff may recover its attorneys' fees in exceptional cases. The facts of this case and the bad conduct of the Defendants are exceptional.

59.     Pursuant to 7 U.S.C. 2564(b), Plaintiff may recover damages up to three times the amount determined by either judge or jury. The facts of this case likewise demonstrate cause for the Court to treble damages. Enhancing damages, in context of the *Read*[1] factors, is proper in this case.

60.     First, in context of the *Read* factors, Defendants deliberately utilized Plaintiff's federally protected varieties with knowledge of the protected status of each such variety.

61.     Second, in context of the *Read* factors, Defendants did not undertake a reasonable investigation into its activities to avoid infringement, but rather acted with deliberate knowledge of Plaintiff's exclusive rights to such varieties.

---

[1] *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)

- 13 -

62.     Third, in context of the *Read* factors, Defendants, as parties to this litigation, have raised and made baseless claims of invalidity of Plaintiff's Certificates of Protection without reasonable diligence and factual support.

63.     Fourth, in context of the *Read* factors, Defendants, as parties to this litigation, have claimed that the Green Thumb Defendnats were granted a license without any factual or legal basis for such a claim.

64.     Fifth, in context of the *Read* factors, Defendants, as parties to this litigation, have claimed that Plaintiff lacks standing to bring Plant Variety Protection Act claims without any factual or legal basis for such a claim.

65.     Sixth, in context of the *Read* factors, Defendants have taken no remedial action but rather continue to export Plaintiff's protected varieties.

66.     Seventh, in context of the *Read* factors, Defendants have attempted to conceal their misconduct by fabricating documents in furtherance of Defendants' export scheme and to use falsified documents to conceal the variety being exported in order to avoid detection.

67.     The United States Grain Standards Act, 7 U.S.C. § 71 *et seq*. ("USGSA"), was enacted in part to promote the marketing of high-quality grain to foreign and domestic buyers. 7 U.S.C. § 74(b)(1).

68.     The USGSA therefore authorizes the Secretary of Agriculture to establish "standards of kind, class, quality, and condition" for grains including wheat and oats which are to be sold in foreign or interstate commerce. 7 U.S.C. § 76.

69.     Pursuant to 7 U.S.C. § 77(a)(1), "no person shall ship from the United States to any place outside thereof any lot of such grain, unless such lot is officially weighed and officially inspected in accordance with such standards or procedures, and unless a valid official certificate

- 14 -

showing the official grade designation and certified weight of the lot of grain has been provided by official inspection personnel and is promptly furnished by the shipper, or the agent of the shipper, to the consignee with the bill of lading or other shipping documents covering the shipment."

70.    To ensure that purchasers may rely on the certifications, the USGSA prohibits acts which would undermine that reliability. 7 U.S.C. § 87b.

71.    Prohibited acts include the knowingly false creation, issuance, alteration, forgery, or counterfeiting of any official certificate, official form, or official mark, 7 U.S.C. § 87b(a)(1). Knowingly uttering, publishing, or using as true any such false document is also prohibited. 7 U.S.C. § 87b(a)(2).

72.    Prohibited acts also include knowingly making false representations as to whether "any grain has been officially inspected, or officially inspected and found to be of a particular kind, class, quality, or condition…." 7 U.S.C. § 87b(a)(6).

73.    Persons who commit any of the foregoing prohibited acts are subject to either or both criminal and civil penalties. 7 U.S.C. §§ 86, 87c.

74.    Pursuant to 7 U.S.C. § 87c(a), any person who commits any of the foregoing prohibited acts "shall be guilty of a felony and shall, on conviction thereof, be subject to imprisonment for not more than five years, or a fine of not more than $20,000, or both such imprisonment and fine."

75.    Pursuant to 7 U.S.C. § 86(c), any person who commits any of the foregoing prohibited acts is subject to "a civil penalty not to exceed $75,000 for each such violation."

76.    The USGSA imposes liability on principals for the acts of their agents in addition to the agents' individual liability. 7 U.S.C. § 87d.

- 15 -

77.     To export seed to China or other countries, the Plant Protection Act, 7 U.S.C. § 7712, requires a permit.

78.     Pursuant to 7 U.S.C. § 7718, the Secretary of Agriculture may certify as to the freedom of plants . . . from plant pests or noxious weeds, according to phytosanitary or other requirements of the countries to which the plants, plant products . . . may be exported.

79.     An exporter must first apply for and thereafter receive a lawfully issued Phytosanitary Certificate through the United States Department of Agriculture. Pursuant to 7 U.S.C. § 7712, all such plants must be accompanied by a permit issued by the Secretary prior to the export of such plant.

80.     Pursuant to 7 U.S.C. § 7734, any person that knowingly violates the Plant Protection Act, or *knowingly forges, counterfeits*, or, without authority from the Secretary, uses, alters, defaces, or destroys any certificate, permit, or other document provided for in this title, shall be fined under title 18 of the United States Code, imprisoned not more than 1 year, or both.

81.     Pursuant to 7 U.S.C. § 7734, if there are multiple violations, i.e., on the second and any subsequent conviction of a person of a violation of this title under paragraph (1), the person shall be fined under title 18 of the United States Code, imprisoned not more than 10 years, or both.

82.     Also pursuant to 7 U.S.C. § 7734, a person may be assessed a civil penalty up to $50,000 for an individual, $250,000 in the case of any other person for each violation, and $500,000 for all violations adjudicated in a single proceeding.

83.     The same section provides for liability for acts of an agent, whereby failure of any officer, agent, or person acting for or employed by any other person within the scope of his or her employment, shall be deemed also to be the act, omission, or failure of the other person.

4929-8693-3405, v. 1

84.     Plaintiff identifies the foregoing requirements of the United States Grain Standard Act and the Plant Protection Act to illustrate the stringent standards for the export of grain from the United States and the substantial consequences of engaging in fraud, forgery, or counterfeiting of any documents offered in connection with the Phytosanitary Certificate procurement and the lawful exporting processes.

85.     Defendants exported Plaintiff's oats to China, and China requires U.S. sellers wishing to export oats to obtain a Phytosanitary Certificate issued by the exporting nation (here the United States), and an Import Permit issued by the destination country (here China).

86.     Normally, the Chinese importer (agent, distributor, joint-venture partner, or foreign-invested enterprise) will gather the documents necessary for importing goods and provide them to Chinese Customs agents.

87.     Necessary documents vary by product but may include standard documents, such as a bill of lading, invoice, shipping list, customs declaration, insurance policy, and sales contract, as well as more specialized documents such as an import quota certificate for general commodities (where applicable), import license (where applicable), *inspection certificate* (where applicable), and other safety or quality licenses.

88.     Defendants, in furtherance of their unlawful scheme to export one or more of Plaintiff's federally protected oat varieties, knowingly forged and created one or more counterfeit documents for use in furtherance of Defendants' unauthorized and illegal export scheme of Plaintiff's varieties.

89.     Defendants materially changed the variety name on documentation associated with the exporting process with the purpose of concealing Defendants' violation of Plaintiff's federal plant protection rights.

- 17 -

4929-8693-3405, v. 1

90.    Defendants knowingly manufactured a counterfeit document entitled "CONFIRMATION OF SEED ANALYSIS" with the purpose of securing a Phytosanitary Certificate in order to export Plaintiff's varieties to China. A true and correct copy of the counterfeited document is attached as **Exhibit 4.**

91.    Defendants, in furtherance of unlawfully exporting one or more of Plaintiff's federally protected varieties, knowingly forged, counterfeited, manufactured, and applied a fake signature of a known seed certifying official, Dr. Neal Foster, without his knowledge or authority.

92.    The signature identified on **Exhibit 4** is not that of Dr. Neal Foster.

93.    The document identified as **Exhibit 4** contains numerous deletions, additions, and manipulations, all of which Defendant Rensink admitted he made in his capacity as an agent of the Green Thumb Defendants.

94.    Defendants, in furtherance of unlawfully exporting one or more of Plaintiff's federally protected varieties, knowingly utilized such forged and counterfeit documents to facilitate the unlawful exporting of one or more of Plaintiff's federally protected varieties.

95.    Defendants knowingly fabricated export documents and falsely indicated such documents originated from and were authorized by the South Dakota Crop Improvement Association, which is the seed certifying agency for the relevant geographic region.

96.    No such document lawfully exists as created by the South Dakota Crop Improvement Association.

97.    The counterfeit, forged, fabricated, and fraudulent CONFIRMATION OF SEED ANALYSIS document identifies Josh@gtcommodities.com as the addressee of such document. Josh Rensink is the managing member of Green Thumb Commodities and an authorized agent of the Green Thumb Defendants.

4929-8693-3405, v. 1

98.     Defendants knowingly created one or more counterfeit, forged, fabricated, and fraudulent CONFIRMATION OF SEED ANALYSIS to falsely identify the oat variety to be exported as "Tatsu" with the purpose of concealing the illegal and unauthorized export and infringement.

99.     There is no such oat variety available in South Dakota named "Tatsu."

100.    Defendants knowingly fabricated and created a fraudulent CONFIRMATION OF SEED ANALYSIS document to falsely identify the oats to be exported to be part of Lot Number "CFH 21."

101.    Lot Number "CFH 21" does exist and is on file with the South Dakota Crop Improvement Association. **Exhibit 5**.

102.    The South Dakota Crop Improvement Association issued a South Dakota Bulk Sales Certificate for Lot No. CFH 21 and that lot corresponds to Plaintiff's Hayden variety. **Exhibit 5**.

103.    Defendants' counterfeit CONFIRMATION OF SEED ANALYSIS document identifies the oat variety to have a Certification Number "SD20-9747."

104.    Certification Number "SD20-9747" does exist and is assigned to Plaintiff's Hayden variety. **Exhibit 5**.

105.    Defendants' counterfeit CONFIRMATION OF SEED ANALYSIS document falsely identifies the "Tatsu" oat variety to have a "Seeds/lb of 13,314."

106.    An identical "Seeds/lb" having the same "13,314" does exist and is connected to a report wherein Green Thumb sold 1958 bushels of Plaintiff's "Hayden" oats to Kauffman Seeds of Hutchinson, Kansas. **Exhibit 5**.

4929-8693-3405, v. 1

107.    Defendants knowingly manipulated and created counterfeit documents for the purpose of obtaining a Phytosanitary Certificate to use in exporting for use as seed to China, with full knowledge of the laws governing exporting, and with the specific intent to conceal its infringement of Plaintiff's federally protected seeds.

108.    Defendants knowingly manipulated and created counterfeit documents for the purpose of obtaining a Phytosanitary Certificate and deleted Plaintiff's variety "Hayden" with the intention to conceal their illegal and unauthorized conduct.

## COUNT I
## DAMAGES FOR INFRINGEMENT PER 7 U.S.C. § § 2541(a)

109.    Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

110.    Without authorization from Plaintiff, Defendants stocked Plaintiff's protected varieties for purposes in violation of the PVPA.

111.    Without authorization from Plaintiff, Defendants conditioned Plaintiff's protected varieties for propagation purposes in violation of the PVPA.

112.    Without authorization from Plaintiff, Defendants sold Plaintiff's protected varieties for the purpose of propagation in violation of the PVPA.

113.    Without authorization from Plaintiff, Defendants dispensed Plaintiff's protected varieties, in a form which can be propagated, without restriction to other growers, in violation of the PVPA.

114.    Without authorization from Plaintiff, Defendants instigated and actively induced infringement under the PVPA by engaging in the illegal seed business described above, in violation of the PVPA.

4929-8693-3405, v. 1

115.    Without authorization from Plaintiff, Defendants actively diverted grain back into seeding channels and are deemed to have notice that such conduct violates the PVPA.

116.    Without authorization from Plaintiff, Defendants actively exported Plaintiff's varieties in violation of the PVPA.

117.    Without authorization from Plaintiff, Defendants knowingly and willfully concealed their use of Plaintiff's protected varieties in connection with exporting Plaintiff's varieties in violation of the PVPA, and in violation of the USGSA and the Plant Protection Act.

118.    Without authorization from Plaintiff, Defendants willfully and deliberately infringed the PVPA by the foregoing acts.

119.    In violation of the USGSA and the Plant Protection Act, Defendants knowingly engaged in fraud and counterfeiting, demonstrating the Defendants' willful violation of Plaintiff's PVPA rights.

120.    Defendants' actions constitute an infringement of Plaintiff's rights under 7 U.S.C. § 2541 for which all Defendants are accountable in damages.

121.    As a result of Defendants' actions, Plaintiff has suffered harm for which it is entitled to damages, including without limitation:

    a)    Compensation for Defendants' unauthorized sale, use, condition, shipping, and exporting of Plaintiff's protected varieties in an amount not less than a reasonable royalty, per 7 U.S.C. § 2564(a);

    b)    Damage to Plaintiff's reputation or the reputations of Plaintiff's protected varieties by the unauthorized sale of said varieties which were not produced in accordance with Plaintiff's practices and standards; and

    c)    Expenses incurred or reasonably expected to be incurred as a direct result of Plaintiff's actions to recover seed or grain grown from Defendants' unauthorized purchase, use, and sale of seed, and/or expenses incurred in identifying and notifying persons who purchased seed of Plaintiff's protected varieties from Defendants that such seed was not produced by or in accord with the standards of Plaintiff and that any grain grown from such seed is protected by the PVPA, cannot

- 21 -

be grown for any purpose other than as commercial grain crop, and cannot be held out as seed of any of Plaintiff's protected varieties.

## COUNT II
## INJUNCTION PURSUANT TO 7 U.S.C. § 2563

122.   Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

123.   Plaintiff is entitled to the following injunctive relief pursuant to 7 U.S.C. § 2563:

a)   Permanently enjoining any further sales or other disposition by Defendants of Plaintiff's PVPA-protected varieties for reproductive purposes;

b)   Requiring the ultimate destruction of all oats of Plaintiff's protected varieties in Defendants' possession or control to prevent future illegal harvests from being replanted;

c)   Allowing for access to Defendants' facilities and premises, including leased lands, to identify the scope of the infringing conduct at a time when the crops remain in the field, thereafter permitting the crops to grow, harvest, and then store in constructive trust while the suit proceeds;

d)   Requiring the disclosure of the names and addresses of all persons or entities who purchased oat seed from, supplied oat seed to, conditioned oat seed for, or stored oat seed for or with Defendants, to allow the parties to identify the scope of the illegal replanting and allow the parties sufficient time to give adequate notice to those persons or entities of their opportunity to be heard, with the ultimate goal to allow the crop, once identified, to be harvested and stored in constructive trust while the suit proceeds; and

d)   Requiring an accounting of all revenues and profits Defendants derived from the sale, use, conditioning, or export of Plaintiff's protected varieties.

## COUNT III
## TREBLE DAMAGES AND ATTORNEYS' FEES

124.   Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

125.   Defendants knew or recklessly disregarded the federal prohibitions of selling and exporting Plaintiff's protected oat varieties in violation of Plaintiff's federal intellectual property rights.

4929-8693-3405, v. 1

126.    Defendants knowingly and intentionally caused substantial damage to Plaintiff and recklessly placed Plaintiff at substantial risk of further misuse of its seed by placing the seed in commerce without notice of its protected status and permitted export of such varieties.

127.    As the result of Defendants' actions, Plaintiff has incurred substantial damages, attorney's fees, and costs, and will in the future incur additional damages, attorney's fees, and costs.

128.    Defendants' actions constitute an exceptional case for which the award of attorney's fees are recoverable pursuant to 7 U.S.C. § 2565.

129.    Treble damages are appropriate pursuant to 7 U.S.C. § 2564(b) of the PVPA.

130.    Plaintiff does not seek a jury trial.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)    Awarding Plaintiff compensation for damages resulting from the infringement in an amount not less than a reasonable royalty, trebling such damages, and further awarding Plaintiff's attorneys' fees and costs due to the exceptional nature of this case.

b)    Ordering permanent injunctive relief:

   i.    Directing Defendants to make no further sales for reproductive purposes of any oats for which Plaintiff holds PVPA protection without express authorization from Plaintiff;

   ii.    Directing Defendants to identify all storage facilities and suppliers of oat seed;

   iii.    Requiring Defendants to account for all acquisitions, uses and sales of federally protected oats, including the names and addresses of all suppliers and purchasers and the quantity so purchased or sold.

c)    Awarding pre-judgment and post-judgment interest; and

d)    Awarding such other relief as the Court may deem just and proper.

Dated this 2nd day of April, 2026.

WOODS, FULLER, SHULTZ & SMITH P.C.

By _____ /s/ Tim R. Shattuck _____
Tim R. Shattuck
Jacquelyn A. Bouwman
PO Box 5027
300 S. Phillips Avenue, Suite 300
Sioux Falls, SD 57117-5027
Telephone (605) 336-3890
Email: Tim.Shattuck@woodsfuller.com
Email: Jacquelyn.Bouwman@woodsfuller.com


Mark Murphey Henry, Ark. #97170
HENRY LAW FIRM
P.O. Box 4800
Fayetteville, Arkansas 72702
Telephone: (479) 368-0555
Email: mark@henry.us
Admitted Pro Hac Vice

*Counsel for Plaintiff South Dakota*
*Board of Regents, as governing board*
*for South Dakota Agricultural Experiment*
*Station and South Dakota State University*

- 24 -